## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| SHA'DARIUS HOUSLEY, a Minor Child By and through his Next Friend, William Hubbard, | |
| Plaintiff, | |
| | CASE NO. |
| THE DIAL CORPORATION, a Henkel Company, | |
| AND | |
| DOMINIQUE HOUSLEY, | |
| Defendants. | |

## NOTICE OF REMOVAL

Under 28 U.S.C. §§ 1332, 1441, and 1446, Defendant The Dial Corporation ("Dial") removes to this Court the above-captioned state court civil action pending in the Circuit Court of Jackson County, Missouri.

## INTRODUCTION

Plaintiff alleges that on October 21, 2012, Sha'darius Housley, a minor with significant mental and physical limitations, ingested a Purex Ultrapack laundry pod while at his mother Dominique Housley's house. The laundry pod was stored under the kitchen sink. Plaintiff alleges that, as a result of ingesting the laundry pod, he suffered serious health complications.

On May 16, 2016, Plaintiff filed a lawsuit in Jackson County Circuit Court with the assistance of his Next Friend. He sued the foreign corporation The Dial Corporation ("Dial") for product liability and his in-state mother Dominique Housley for failing to supervise him.

But Dominique Housley is a defendant in name only. She served no discovery on Plaintiff, and Plaintiff served no discovery on her either. She has asserted no affirmative defenses to Plaintiff's claims. Plaintiff has no intention of prosecuting his claims against her. At her deposition, Plaintiff's counsel did not ask her a single question.

Instead, Dominique Housley and Plaintiff have colluded against Dial. The collusion and Plaintiff's fraudulent joinder of Dominique Housley came to light at Dominique Housley's deposition on June 27, 2017. At her deposition, Dial learned for the first time that the case was what the circumstantial evidence suggested – Dominique Housley was fraudulently joined to defeat removal.

During Housley's deposition, Dial learned that *Plaintiff's counsel* represented Dominique Housley and her husband Anthony Jackson regarding Sha'darius Housley's ingestion of the laundry pod before this present suit was filed. In addition, Dominique Housley did not place the laundry pods under the kitchen sink or know that they were there until after Sha'darius Housley ingested them. These facts defeat any claim against Dominique Housley, and Plaintiff's counsel would have learned all of this during pre-suit interviews and consultations with Housley and Jackson. Plaintiff has no claim against Dominique Housley, and he fraudulently joined Dominique Housley for the sole purpose of defeating diversity jurisdiction.

This Notice of Removal was timely filed within 30 days of Dial's receipt of information from which it could ascertain that the case is removable. *See* 28 U.S.C. § 1446(b)(3). Moreover, Plaintiff concealed all of this information for over a year until Dominique Housley's deposition on June 27, 2017. Previously, Dial, through interrogatories, asked both Dominique Housley and Plaintiff to identify "all individuals" who had "knowledge, information, documents, or an opinion" regarding the subject matter of the lawsuit. Plaintiff identified *only* Dominique Housley

and her other two young children who were at the home on the day Sha'darius Housley ingested a laundry pod. Defendant Housley identified the same individuals. Both Plaintiff and Dominique Housley concealed Anthony Jackson's involvement and misrepresented the facts.

Plaintiff's conduct constitutes bad faith under 28 U.S.C. § 1441(c)(1). Therefore, the one-year limitation set forth in 28 U.S.C. § 1446(b)(3) is excused.

## STATEMENT OF GROUNDS FOR REMOVAL

1.      On March 16, 2016, Plaintiff Sha'darius Housley filed his Petition against Defendants The Dial Corporation and Dominique Housley in the Circuit Court of Jackson County, Missouri, Case No. 1616-CV-11447 ("Petition") asserting claims for damages against Defendant Dial. [Ex. A, pp. 3-11.]

2.      Plaintiff alleges that on or about October 21, 2012, Sha'darius Housley, a minor with intellectual and physical limitations, ingested a Purex Ultrapack laundry pod manufactured by Dial. Under both common law negligence and strict liability, Plaintiff alleges that Dial is liable to Plaintiff because the Ultrapack laundry pod container was not in child resistant packaging. [Ex. A, pp. 3-11 Petition, Counts 1 and 2.] Plaintiff also alleges that Dial failed to provide adequate warnings on the Ultrapack package under both common law negligence and strict liability theories. [Ex. A, pp. 3-11 Petition, Counts 3 and 4.]

3.      Plaintiff asserts a single claim against Defendant Housley. "Upon information and belief," Plaintiff alleges that Defendant Housley failed to "supervis[e] the Plaintiff to prevent him from getting access to the laundry pods." [Ex. A, pp. 3-11, Petition Counts 3 and 4.]

4.      Plaintiff alleges that Sha'darius Housley accessed the laundry pods underneath the kitchen sink. [Ex. A, pp. 3-11 Petition, Counts 3 and 4.]

5. Plaintiff's Petition identifies no amount in controversy. [Ex. A, pp. 3-11 Petition, generally.] On May 26, 2017, Plaintiff Housley served Defendant Dial with a "Life Care Plan" identifying Plaintiff's damages at approximately $24 million. [Ex. S.]

6. Plaintiff's Petition alleges that Sha'darius Housley is a Missouri resident and that his Next Friend, William Hubbard, is a Missouri licensed attorney. [Ex. A, pp. 3-11, Petition ¶ 1.]

7. Plaintiff's Petition alleges that Defendant Housley is a Missouri resident. [Ex. A, pp. 3-11 Petition ¶ 3.]

8. Plaintiff's Petition alleges that Defendant Dial is a foreign corporation with its principal place of business in Scottsdale, Arizona. [Ex. A, pp. 3-11, Petition ¶ 2.]

9. Before suing, Defendant Housley and her husband Anthony Jackson met with Plaintiff's counsel Mr. John Turner and formed an attorney-client relationship. [Ex. P, Dominique Housley Depo. 89:6 – 91:9.] Defendant Housley, Anthony Jackson, and Plaintiff's counsel discussed Sha'darius Housley's ingestion of the laundry pod and the facts underlying this lawsuit. [Ex. P, Dominique Housley Depo. 89:6 – 91:9.]

10. On June 6, 2016, Defendant Housley answered Plaintiff's Petition and asserted no affirmative defenses to any claim. [Ex. B, pp. 2-8.]

11. Plaintiff and Defendant Housley served Defendant Dial with over 10 combined sets of Interrogatories and Requests for Production of Documents. [Ex I, pp. 1-3; Ex. D, pp. 16-17; Ex. I, pp. 4-6; Ex. I, pp. 7-8; Ex. L, pp. 6-7; Ex. L, pp. 146-47; Ex. N, pp. 1-2; Ex. N, pp. 117-119; Ex. N, 240-241.]

12. On April 13, 2017, Plaintiff filed a Motion to Enforce Discovery to require asking the Circuit Court to order Dial to produce confidential business records without a protective

4

order in place. [Ex. L, pp. 8-14.] On April 16, 2017, Defendant Housley filed a nearly identical Motion to Enforce Discovery and asked the Circuit Court to order Dial to produce confidential business records without a protective order in place. [Ex. L, pp. 71-77.]

13.     Never did Plaintiff serve Defendant Housley with any discovery requests.

14.     Never did Plaintiff notice Defendant Housley for deposition.

15.     Never did Defendant Housley serve Plaintiff any discovery requests.

16.     On November 15, 2016, Plaintiff answered Defendant's first interrogatories. Dial, asked Plaintiff to identify "all individuals" who had "knowledge, information, documents, or an opinion" regarding the subject matter of the lawsuit. Plaintiff identified Dominique Housley and her other two young children who were at the home on the day Sha'darius Housley ingested a laundry pod. Plaintiff did not identify Anthony Jackson. [Ex. Q, Plaintiff's Responses to Dials Interrogatories.]

17.     On March 3, 2017, Defendant Dominique Housley answered Defendant's first interrogatories. Dial, asked Defendant Housley to identify "all individuals" who had "knowledge, information, documents, or an opinion" regarding the subject matter of the lawsuit. Defendant Housley identified only herself and her other two young children. She did not identify Anthony Jackson. And when she was asked to "[d]escribe completely and in exact detail exactly how the incident made the basis of this suit occurred," Defendant Housley responded by stated only "Sha'darius got the laundry product and ingested it causing him to be injured. [Ex. R, Defendant Housley's Responses to Dials Interrogatories.]

18.     Counsel for Defendant Housley produced her for deposition on June 27, 2017. [Ex. P, Dominique Housley Depo.]

19.     At her deposition, Dial learned for the first time that: (1) Dominique Housley and her husband Anthony Jackson had an attorney-client relationship with Plaintiff's counsel, (2) Dominique Housley did not place the laundry pods under the kitchen sink where they were accessible to Plaintiff, (3) Dominique Housley did not know the laundry pods were located under the kitchen sink until after Sha'darius Housley ingested the pods, and (4) Dominique Housley was only away from Sha'darius Housley for three to four seconds in the restroom when Sha'darius Housley accessed the pods. [Ex. P, Dominique Housley Depo. 89:6 – 91:9; 101:11-20; 221:4-10.].

20.     Plaintiff counsel asked no questions of Defendant Housley at her deposition. [Ex. P, Dominique Housley Depo. 226:18.]

21.     On July 7, 2017, Plaintiff filed a Motion in Limine that contained 29 paragraphs, each seeking separate relief. Of those 29 paragraphs, 12 specifically seek to prevent Dial from introducing into evidence the negligent actions of Defendant Housley. [Ex. O, pp. 27-33 ¶¶ 7, 8, 9, 10, 11, 12, 13, 15, 16, 17, 20, 21.] Over 40% of Plaintiff Housley's motions in limine are dedicated to preventing Defendant Dial from introducing evidence regarding the fault of Defendant Housley.

22.     On July 7, 2017, Defendant Housley filed a Motion to Strike all of Defendant Dial's expert witnesses. [Ex. O, 67-73.] Among other things, Defendant's expert witnesses are identified to testify regarding the reasonable value of medical services previously provided to Sha'darius Housley; and the future reasonable value of medical services to be provided to Sha'darius Housley. [Ex. O, 67-73.]

23.     Defendant Dial's expert testimony regarding the reasonable value of medical services previously provided to Sha'darius Housley relates to total damages, which would reduce

6

Sha'darius Housley's potential damages for which **Defendant Housley could be liable**. Despite the relevant and favorable testimony, Dominique Housley seeks to exclude the testimony.

24.     Defendant Dominique Housley has been fraudulently joined to defeat diversity jurisdiction. Absent the fraudulently joined claim against Defendant Housley, this case meets the requirements for federal jurisdiction under 28 U.S.C. § 1332(a)(1).

25.     Venue in this Court is proper under 28 U.S.C. §§ 105(b)(1), 1441(a), and 1446(a), because the Circuit Court of Jackson County, Missouri is within the United States District Court for the Western District of Missouri.

26.     This notice of removal is timely under 28 U.S.C. § 1446(b) because it is being filed within thirty days after Defendant first received a copy of the transcript of the deposition of Defendant Housley from which Defendant could ascertain that the case is removable.

27.     Plaintiff's concealment of information regarding the fraudulent joinder for over a year until Dominique Housley's deposition on June 27, 2017 conduct constitutes bad faith under 28 U.S.C. § 1441(c)(1). Therefore, the one-year limitation set forth in 28 U.S.C. § 1446(b)(3) is excused.

28.     Under 28 U.S.C. § 1446(d), this Notice of Removal will be served upon all adverse parties and will be filed promptly in the State Court Action.

29.     Under 28 U.S.C. § 1446(a), Defendant is filing contemporaneously a current docket sheet from the State Court Action and a copy of all the pleadings and papers filed with the state court. [See Ex. T, Docket Sheet; Exs. A – O (Copies of Pleadings Organized by Month).]

## <u>ARGUMENTS AND ANALYSIS</u>

A civil action brought in a state court may be removed to the proper district court where the district court has original jurisdiction. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction in all civil actions between citizens of different states if the amount in

controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Such an action is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

Removal will not be defeated by collusive or fraudulent joinder of a resident defendant. *See Anderson v. Home Ins. Co*., 724 F.2d 82, 84 (8th Cir. 1983) (*per curiam*). "[J]oinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal." *Id.* In this Court, fraudulent joinder may be proved one of two ways. First, "joinder is fraudulent, if on the face of the state court complaint, no cause of action lies against the resident defendant." *Reeb v. Wal-Mart Stores, Inc.*, 902 F. Supp. 185, 187 (E.D. Mo. 1995). Second, if "the reviewing court finds that the plaintiff has no real intention of prosecuting the action against the resident defendant, joinder is fraudulent and removal is proper." *Id.*; see *also Dumas v. Patel*, 317 F. Supp. 2d 1111, 1113, 2004 U.S. Dist. LEXIS 8422, *4-5 (W.D. Mo. May 6, 2004) ("If there is no reasonable basis in fact or law supporting the claim against the resident defendant, or the reviewing court finds that the plaintiff has no real intention of prosecuting the action against the resident defendant, joinder is fraudulent and removal is proper."); *Sprint Spectrum L.P. v. AT&T Communs., Inc.*, 2001 U.S. Dist. LEXIS 25620, *6, 2001 WL 36143293 (W.D. Mo. Feb. 8, 2001) (same).

To prove the existence of fraudulent joinder, Dial may pierce the pleadings, ask this Court to consider the entire record, and determine the basis of joinder by any means necessary. See *Housel v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 125736, *4, 2014 WL 4421854 (W.D. Mo. Sept. 9, 2014) ("Courts pierce the pleadings in order to determine the issue of fraudulent joinder."); *see also Dumas v. Patel*, 317 F. Supp. 2d 1111, 1114-15 (W.D. Mo. 2004) (citations omitted) (piercing the pleadings to determine fraudulent joinder); *In re Genetically*

*Modified Rice Litig.*, 618 F. Supp. 2d 1047, 1052 (E.D. Mo. 2009) (same); *Johnson v. Autozoners*, No. 16-01299-CV-W-ODS, 2017 U.S. Dist. LEXIS 22930, at *4 (W.D. Mo. Feb. 17, 2017) (same).

I.      Defendant Housley Is Not Required To Consent to the Removal

        In most removed cases, all defendants must consent to removal. *Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1062 (8th Cir. 2008) (stating "the failure of one defendant to consent renders the removal defective"). Dominique Housley, based on her year-long track record of acting as the Plaintiff, will assuredly not consent to removal. But her lack of consent is irrelevant because she was fraudulently joined. *See Bean v. Warner-Lambert Co.*, 2000 U.S. Dist. LEXIS 20411, *13 (W.D. Mo. Jan. 26, 2000) ("The Court finds that because Defendant Warner-Lambert has asserted allegations of fraudulent joinder in this action Defendant Warner-Lambert's failure to obtain the proper consent from Defendants Kunkel and C.D. Smith was not required.") Defendant Housley's consent is unnecessary and there are no other Defendants.

II.     The Amount in Controversy Is Satisfied

        Plaintiff pleads no specific amount of damages he seeks to recover. Dial, however, can establish that the amount in controversy requirement is met based upon Plaintiff's allegations of injuries and his requested relief. When a plaintiff fails to plead the recovery they seek, "the removing party in a case based upon diversity of citizenship must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." *In Re Minn. Mut. Life Ins. Co., Sales Practice Lit.*, 346 F.3d 830, 834 (8th Cir. 2003); *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Where the Plaintiff has alleged serious injuries, Missouri federal courts have concluded the amount in controversy requirement has been met. *See Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2002); *Hall v. Vlahoulis*, 2007 WL 433266, at * 1 (W.D. Mo. Feb. 5, 2007).

Plaintiff seeks serious damages for hospitalization and damages to his neurologic, respiratory, gastrointestinal and vascular systems and pain and suffering. [Ex. A, Plaintiff's Petition.] Plaintiff also served a Life Care Plan seeking identifying his damages at approximately $24 million. [Ex. S, Life Care Plan.] The amount is controversy threshold is satisfied.

III.    Dial's Notice of Removal Is Timely

Housley's case became removable on June 29, 2017, the date Dial received Dominique Housley's deposition transcript. Section § 1446(b)(3) provides:

> If the case stated by a plaintiff's initial complaint is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

"Federal courts do not impose upon a defendant a duty to investigate and determine removability where the initial pleading or subsequent document indicates that the right to remove may exist, although a defendant must apply 'a reasonable amount of intelligence' to the matter." *Patrico v. A.W. Chesterton Co.*, 2014 U.S. Dist. LEXIS 71765, *11 (E.D. Mo. May 27, 2014) (*quoting Cutrone v. Mortg. Elec. Registration Systs., Inc.*, 749 F.3d 137, 143 (2d Cir. 2014)). Defendant deposed Dominique Housley on June 27, 2017, and received a final draft of the deposition transcript on July 13, 2017. The receipt of the transcript triggered Dial's thirty-day deadline to remove. See *Huffman v. Saul Holdings Ltd. Partnership*, 194 F.3d 1072, 1078 (10th Cir. 1999) (deposition testimony qualified as an "other paper" because it "stands on equal footing with written forms of discovery").

During the deposition of defendant Dominique Housley, Dial first learned Dominique Housley was fraudulently joined because (1) she and her husband Anthony Jackson had an attorney-client relationship with Plaintiff's counsel, (2) she did not place the laundry pods under the kitchen sink where they were accessible to Plaintiff, (3) she did not know the laundry pods

were located under the kitchen sink until after Sha'darius Housley ingested the pods, and (4) she was only away from Sha'darius Housley for three to four seconds in the restroom when Sha'darius Housley accessed the pods.

IV.    The One-Year Limitation of 28 U.S.C. § 1446(c) Does Not Bar Removal Because Plaintiff Acted in Bad Faith

This case was filed over a year ago on May 13, 2016. Although 28 U.S.C. 1446(c)(1) does not authorize removal on the basis of diversity jurisdiction more than 1 year after commencement of the action, there is an exception where "the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. 1446(c)(1).

The Eighth Circuit had not addressed bad faith under 28 U.S.C. 1446(c)(1). However, district courts within the circuit have. The Eastern District of Missouri recently adopted the following standard:

> [T]he Court construes the bad-faith exception as a two-step standard. **First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith**; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court. The defendant may introduce direct evidence of the plaintiff's bad faith at this stage—e.g., electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal—but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence.

*Bristol v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 148867, *11-12, 2016 WL 6277198 (E.D. Mo. Oct. 27, 2016) (emphasis added) (adopting the standard articulated in *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D.N.M. Oct. 31, 2014)); *see also Forth v. Diversey Corp.*, 2013 WL 6096528, at *3 (W.D.N.Y. Nov. 20, 2013) (finding that the plaintiff acted in bad faith because

Case 4:17-cv-00577-DGK   Document 1   Filed 07/13/17   Page 11 of 21

the plaintiff obtained no discovery from the non-diverse defendant); *In re Propulsid Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 42675, 2007 WL 1668752, at *1 (E.D. La. June 6, 2007) (denying motion to remand where plaintiff served no discovery on non-diverse defendants, took no depositions of non-diverse defendants, and delayed dismissal of non-diverse defendants); *Lawson v. Parker Hannifin Corp.*, 2014 U.S. Dist. LEXIS 37085, *14 (N.D. Tex. Mar. 20, 2014) (denying motion to remand in part because Plaintiff never served spoiling Defendant with any discovery and never requested or took its deposition); *Ney v. Owens-Illinois, Inc.* (, 2016 U.S. Dist. LEXIS 106785, *12 (E.D. Pa. Aug. 11, 2016) (denying motion to remand because "at no time did Plaintiff pursue questions or discovery related specifically to" spoiling defendant).

Plaintiff did not actively litigate this case against Defendant Housley. Plaintiff served Defendant Housley no discovery requests. Plaintiff never noticed Defendant Housley for deposition. And, at Defendant Housley's deposition, Plaintiff asked no questions. Plaintiff's failure to actively litigate this case against Defendant Housley should "be deemed bad faith." *Bristol*, 2016 U.S. Dist. LEXIS 148867, *11-12, 2016 WL 6277198.

Unlike most bad-faith removal cases in which only the Plaintiff fails to prosecute the case, this case is unique because Defendant Housley is a plaintiff fraudulently captioned as a defendant. Plaintiff has no intention of prosecuting this case against Defendant Housley. Defendant Housley knows it and apparently has little intention of defending herself. Instead Defendant Housley has elected to assist Plaintiff with the prosecution. She served no discovery on Plaintiff. And, although Missouri is a fact-pleading state, Plaintiff's petition identifies no set of facts that could show that Defendant Housley is liable. The Petition simply alleges (upon information and belief) that she negligently supervised her child. The pleading cannot survive a *Twombly* challenge, let alone the heightened fact-pleading standards of Missouri courts. *See ITT*

*Commercial Finance Corp. v. Mid–America Marine Supply Corp.* 854 S.W.2d 371, 380 (Mo. banc 1993) ("Where the federal courts now use discovery to identify the facts upon which the plaintiff's claim rests, such has always been the role of pleadings in Missouri. Finally, where the federal courts rely on summary judgment procedures to dispose of baseless claims, such continues to be the role of motions to dismiss in Missouri."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). But Housley's decision to not move to dismiss is not surprising given Defendant Housley's decision to assert no affirmative defenses.

Even more convincing is Defendant Housley's actions in prosecuting Plaintiff's Housley case against Dial. Among other things, Defendant Housley (1) sought to compel Defendant's Dial discovery alongside Plaintiff's motion to enforce discovery, (2) sought to exclude Defendant's Dial expert witnesses whose testimony would be favorable to Defendant Housley, (3) Defendant Housley's counsel traveled from Missouri to North Carolina and Arizona to depose Dial's current and former employees. Defendant Housley's counsel willingness to actively prosecute the case against Dial is surprising. Defendant Housley has neither the assets or financial means to compensate her highly experienced and competent counsel. She has no homeowner insurance, no health insurance, and is on public assisted housing. [Ex. P, Dominique Housley Depo. 72:2-16; 80:23-81:8.] When asked what she was paying her counsel at the deposition, her counsel instructed her not to answer. [Ex. P, Dominique Housley Depo. 13:7-23.]

At Dominique Housley's deposition, Defendant Dial learned that Dominique Housley was represented by Plaintiff's counsel regarding this litigation. Dominique Housley testified at her deposition she, with her deceased husband Anthony Jackson, met with Plaintiff's counsel

regarding her son Sha'darius Housley's ingestion of the laundry pod. [Ex. P, Dominique Housley Depo. 89:6 – 91:9.] Dominique Housley testified that the only reason she would ever have to speak with Mr. Turner would be to discuss the facts of this case. But she could not remember when she spoke with him, the number of times she spoke with him, or any specific details of the conversation. [Ex. P, Dominique Housley Depo. 91:2- 96:13.] She could not recall if she spoke with Mr. Turner for more than hundred times because "it been so long ago." [Ex. P, Dominique Housley Depo. 91:2- 96:13.] She also could not remember if she spoke to him more than once. [Ex. P, Dominique Housley Depo. 93:16-17.] She could not remember if she showed him the laundry pod bag. [Ex. P, Dominique Housley Depo. 93:18-22.] She could not remember if she spoke with Mr. Turner before or after the Petition for Damages was filed in this case. [Ex.P, Dominique Housley Depo. 95:6-8.]

It is difficult to understand how Plaintiff's counsel could meet with a client, form an attorney-client relationship, learn facts regarding the ingestion of the laundry pod under the guise of the attorney-client relationship, and then sue the client using the information learned in the representation.

The simple fact is that Defendant Housley was sued solely to serve as a removal spoiling defendant. She serves no other purpose. At her deposition, she testified that she had no idea what Plaintiff accused her of doing. She stated:

```
19        Q.   Do you know what somebody accused you of
20    doing in the lawsuit?
21        A.   No.

. . .
```

```
 6        Q.    Okay.  Do you know what you've been

 7   accused of doing?

 8              MR. MARK KEMPTON:  Same objection, same

 9   direction.

10        A.    No.
```

…

```
 3        Q.    Okay.  So can you indicate for me where

 4   you see your name?

 5        A.    Right here.

 6        Q.    Okay.  And then directly beneath that,

 7   what does the word follow after your zip code?

 8        A.    Defendant.

 9        Q.    Okay.  Do you understand that you're a

10   defendant in this case?

11        A.    I don't know.  I don't know what that

12   means.
```

[Ex. P, Housley Depo. 7:19-21, 9:6-10; 10:3-12.]

The fact that she has no knowledge of her role in this lawsuit shows that she is a sham defendant. Plaintiff pursued no claim against her. Defendant Housley has done nothing to defend herself. Instead, Defendant Housley dedicated a year of litigation to prosecuting Dial on behalf of Plaintiff. Defendant Housley was fraudulently joined in bad faith to keep this case out of federal court.

V.    Plaintiff Fraudulently Joined Defendant Dominique Housley

In Missouri district courts, a removing Defendant may prove fraudulent joinder by showing *either* no cause of action lies against the resident defendant or by presenting

15

circumstantial evidence that the plaintiff does not really intend to prosecute the action against the resident defendant. Here, removal is proper under both theories.

A.    <u>No Cause of Action Lies Against Dominique Housley</u>

Plaintiff alleges Dominique Housley is at fault for a single action – "failing to supervise" Sha'darius Housley. Plaintiff does not allege that Dominique Housley negligently stored the Ultrapack laundry pod. He does not claim that Dominique Housley failed to follow the warnings on the laundry pod. Plaintiff does not aver that her actions placed Dominique Housley at risk of injury. Plaintiff claims that Dominique Housley did not know that the Ultrapack laundry could be dangerous to children. [Ex. A, p. 12 Petition ¶ 13.] Dominique Housley admitted in her Answer that was true. [Ex. B, p. 7 Def. Housley's Answer ¶ 3.]

Dial learned for the first time at Dominique Housley's deposition she did not place the laundry pods under the sink and did not know the pods were located there. Dominique Housley further testified that she was in the bathroom for four seconds, and when she came out Sha'darius Housley was drooling blue liquid, had sweet-smelling breath, and was sitting on the Ultrapack package. She testified she immediately called poison control and immediately sought medical care and treatment for Sha'darius Housley.

Missouri has abolished parental immunity and adopted the "reasonable parent standard." *See Hartman v. Hartman*, 821 S.W.2d 852, 857-858 (Mo. 1991). The "reasonable parent standard," affords significant "discretion [to parents] in carrying out their parental duties" subjecting them to scrutiny for only "'clearly unacceptable conduct . . . .'" *Peterson v. Summit Fitness*, 920 S.W.2d 928, 936-937 (Mo. App. 1996) (citations and quotations omitted). Ultimately, the inquiry focuses on "what an ordinarily reasonable and prudent parent would do under similar circumstances." *Id.*

16

To prove his claim, Plaintiff must prove that (1) there was a dangerous condition, *i.e.* the Ultrapack laundry pods, in Defendant Housley's residence, (2) Defendant Housley knew of the existence of the Ultrapack laundry pods, (3) Defendant Housley knew the Ultrapack laundry pods posed a risk to Plaintiff, (4) Defendant Housley failed to use ordinary care to remove, warn, or prevent Sha'darius Housley from accessing the danger, and (5) the Plaintiff was injured because of Defendant Housley's failure to use ordinary care. *See Housel v. HD Dev. of Maryland, Inc., 196 F. Supp. 3d 1039, 1051* (W.D. Mo. July 21, 2016) (citations and quotations omitted). An individual may not be held liable for conditions he or she knows nothing about. *See Medows v. Brockmeier*, 863 S.W.2d 675, 676-77 (Mo. Ct. App. 1993).

In addition, Plaintiff must further show that Dominique Housley's alleged breach caused the Sha'darius Housley's injuries. *See Robinson v. Missouri State Highway & Transp. Comm'n*, 24 S.W.3d 67, 77 (Mo. Ct. App. 2000). "[T]o prove a causal connection to establish negligence, the plaintiff must show both causation in fact and proximate causation." *Id.* Causation in fact exists where the plaintiff's injuries would not have occurred but for the defendant's breach. *Id.* To establish causation in fact, "the plaintiff must show the defendant's negligent conduct more probably than not was a cause of the injury." *Thomas v. McKeever's Enterprises Inc.*, 388 S.W.3d 206, 212 (Mo. Ct. App. 2012) (*quoting Wagner v. Bondex Int'l*, Inc., 368 S.W.3d 340, 350 (Mo. Ct. App. 2012)). Proximate causation asks whether, in hindsight, the plaintiff's injury are the "natural and probable consequence" of the defendant's negligence. Robinson, 24 S.W.3d at 78.

Plaintiff cannot meet his burden as a matter of law. First, Defendant Housley testified that she did not place the laundry pods under the kitchen sink and did not know they were there. She testified:

```
 3        Q.   Okay.  So how did you know that the
 4   package was under the sink?
 5        A.   I didn't know.  My husband put that away.
 6   I didn't know.  He was sitting on top of it.
 7        Q.   Oh, he had it --
 8        A.   Sha'Darius was sitting on top of the
 9   package.
```

[Ex. P, Dominique Housley Depo. 221:4-10.]

Besides not knowing the location of the laundry pods, Plaintiff alleges that Defendant Housley did not appreciate the danger of the pods. She admitted this fact in her Answer. A defendant may not be liable for dangerous condition he or she knows nothing about. *See Housel v. HD Dev. of Maryland, Inc*., 196 F. Supp. 3d 1039, 1052 (W.D. Mo. July 21, 2016) (granting summary judgment to defendant because defendant was unaware of dangerous defect). Plaintiff has no claim against Dominique Housley. Therefore, Defendant Housley is fraudulently joined and removal is proper. See *Reeb v. Wal-Mart Stores*, 902 F. Supp. 185, 189, (E.D. Mo. Oct. 18, 1995) (denying motion to remand and concluding defendant was fraudulently joined because the spoiling defendant manager was transferred to the store only three days before plaintiff's slip and fall, and had not been aware or made aware of the alleged defective carpet).

Plaintiff's allegations against Defendant Housley find no basis in Missouri law. Defendant Housley should be dismissed from this proceeding and the case removed to this Court.

B.     Plaintiff Housley Has No Real Intention of Prosecuting This Action Against Defendant Housley

Before Plaintiff filed his Petition, Defendant Housley and Anthony Jackson met with Plaintiff's Counsel an unknown number of times during an unknown period regarding the

18

ingestion of the laundry pod and a potential cause of action against Dial. This meeting would have revealed that Dominique Housley did not place the laundry pods in a location that was accessible to Sha'darius Housley and that Dominique Housley did not know of the location of the laundry pods. Plaintiff's counsel knew from the outset that Plaintiff had no claim against Dominique Housley.

As discussed *supra* § IV, Plaintiff never intended (and did not) prosecute any claim against Defendant. Plaintiff conducted no discovery against her. Plaintiff did not ask her a single question at her deposition. Perhaps this is because Plaintiff's counsel already knew the facts from representing her and, nevertheless, made a decision to sue Dominique Housley solely to defeat diversity jurisdiction. This is improper under any standard.

## CONCLUSION

Defendant Housley should never have been a party to this lawsuit. She is not a proper party to the lawsuit today. Plaintiff's counsel has known this all along. Despite this knowledge, Plaintiff's counsel fraudulently joined Defendant Housley and concealed information regarding the fraudulently joinder. Therefore, removal of this action from the Circuit Court of Jackson County, Missouri to the United States District Court for the Western District of Oklahoma is proper.

Dated this 13th day of July, 2017.


By: **/s/ Alan L. Rupe**

ALAN L. RUPE, MO #56013
JASON STITT, MO #68923
LEWIS BRISBOIS BISGAARD & SMITH LLP
4600 Madison Avenue, Suite 700
Kansas City, MO 64112
Telephone: 316.609.7900
Facsimile: 316.462.5746
Alan.Rupe@LewisBrisbois.com

*Attorneys for Defendant The Dial Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of July, 2017, a true and correct copy of was sent via

electronic mail to the following:

> John E. Turner
> Christopher P. Sweeny
> Marty W. Seaton
> 10401 Holmes Rd., Suite 450
> Kansas City, MO 64131
> turner-sweeny@msn.com
> csweeny@turnersweeny.com
> mseaton@turnersweeny.com
>
> AND
>
> THE POPHAM LAW FIRM, PC
> Wm. Dirk Vandever
> 712 Broadway, Suite 100
> Kansas City, MO 64105
> dvandever@pophamlaw.com
> *Attorneys for Plaintiff*
>
> KEMPTON AND RUSSELL
> Mark T. Kempton
> T. Brody Kempton
> Samuel R. Kempton
> 114 East Fifth St.
> P.O. Box 815
> Sedalia, MO 65302-0815
> mark@kemptonrussell.com
> brody@ kemptonrussell.com
> sam@ kemptonrussell.com
> *Attorneys for Defendant Dominique*

*Housley*

By   **/s/ Alan L. Rupe**
            Alan L. Rupe
            LEWIS BRISBOIS BISGAARD & SMITH LLP